**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| KELLI PRATHER, | : | Case No. 1:25-cv-679 |
| | : | |
| Plaintiff, | : | |
| | : | District Judge Douglas R. Cole |
| vs. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff has filed a *pro se* civil rights Complaint in this Court against Defendants the United States of America and Fifth Third Bank Incorporated.  (Doc. 1).  By separate Order Plaintiff has been granted leave to proceed *in forma pauperis*.  This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

### Plaintiff's Current Address

Upon initiating this action, Plaintiff was located at the Hamilton County Justice Center. On November 6, 2025, mail sent to Plaintiff at this address was returned to the Court as undeliverable. (*See* Doc. 7).  It appears from the United States Bureau of Prisons online inmate locator that Plaintiff is currently located at the FMC Lexington.  *Viewed at* https://www.bop.gov/mobile/find_inmate/byname.jsp.

The CLERK OF COURT is **DIRECTED** to update Plaintiff's address. Plaintiff is **REMINDED** that it is her responsibility to keep an updated and accurate address on file with the Court. If her address changes or if an address she previously provided is no longer inaccurate, Plaintiff must file a notice that includes her correct address. Failure to do so, and then to miss Court imposed deadlines, may result in this case being dismissed.

### Screening of Plaintiff's Complaint

A. **Legal Standard**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(1) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is

---

[1] Formerly 28 U.S.C. § 1915(d).

2

frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th

3

Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

      B.      **Plaintiff's Allegations**

Plaintiff brings this action in connection with her 2023 federal-court criminal convictions for bank fraud, wire fraud, aggravated identity theft, and making a false statement on a loan application in the United States District Court for the Southern District of Ohio, Case No. 1:21-cr-000381. The convictions were based on Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program loan applications made under the Coronavirus Aid, Relief, and Economic Security Act. *See generally*, *United States v. Prather*, 138 F.4th 963 (6th Cir. 2025). In the Complaint, Plaintiff alleges that Defendant Fifth Third Bank subjected her to discriminatory loan practices in the years prior to the incidents underlying her criminal convictions and asserts constitutional and civil rights violations in connection with her arrest, trial, and convictions.

Plaintiff claims that in the years between 2005 and 2008, she applied for personal and home loans from Fifth Third Bank. (Doc. 1 at 3). According to Plaintiff, Fifth Third representatives cited issues with the loan applications or Plaintiff's creditworthiness in consistently denying the applications. Plaintiff similarly alleges that between 2008 and 2016, Fifth Third also denied loan applications that she submitted for her small minority owned businesses citing business history, application errors, and Plaintiff's creditworthiness as the loan guarantor.

Plaintiff claims that in 2017 Fifth Third settled a discrimination lawsuit based on denying small black-owned businesses and African American citizens personal and home loans. (*Id.* at 3–4). Plaintiff claims she "was one of those individuals who los[t] her economic standing due to Fifth Third's discriminatory lending practices." (*Id.* at 4). Plaintiff asserts that although federal

4

funds were subsequently made available through the Community Reinvestment Act of 1971 ("CRA") and she attempted to access loans for her businesses in 2017, "Fifth Third continued to deny personal, home and business loan application to African-American, small black businesses and mortgage loans for Black home owners." (*Id.* at 6). In doing so, Plaintiff claims that Fifth Third Bank violated the CRA and the Civil Rights Act of 1964.

In June 2020, Plaintiff indicates she submitted six PPP loan applications with Nick Goetz, a Fifth Third Bank employee. (*Id.* at 7). During the application process, Plaintiff claims she spoke with Goetz about her experience with the bank's alleged discriminatory lending practices. According to Plaintiff, Goetz allegedly became defensive in response to her comments and later arranged for her to speak with a supervisor.

Plaintiff received $19,862 on the first PPP loan application. However, in August 2020, she was contacted by law enforcement officials—Special Agent Yi of the FBI and Reier of Ohio Inspector General—and subsequently "interrogated" at the Cincinnati Branch of the Federal Bureau of Investigation for one hour. Plaintiff, who was accompanied by her attorney, alleges that although she was in custody law enforcement officials never mentioned that she was under investigation or informed her of her right to remain silent. During the meeting, Plaintiff claims she shared her concerns regarding Fifth Third's lending practices, amongst other issues, and requested to speak with the United States Attorney. In September 2020, Plaintiff was informed that the remainder of her loan applications were denied.

In November 2020, Plaintiff claims she received a phone call indicating that the United States Attorney was willing to meet with her. However, after arranging the meeting and arriving with her attorney, Plaintiff claims the United States Attorney was not present. Instead, Plaintiff alleges that Yi stated "that is not what this meeting is about I have issued an Indictment for your arrest." (*Id.* at 9). Based on her interactions with law enforcement, Plaintiff alleges that she was

subjected to self-incrimination and unjust imprisonment, as well as denied equal protection of the laws.

During her subsequent criminal trial, Plaintiff states that Goetz testified that although he processed hundreds of PPP application, that he only called the FBI in response to Plaintiff's application. Citing Goetz's testimony that he recalled Plaintiff's comments about discriminatory lending practices, Plaintiff claims that she was retaliated against for exercising her First Amendment rights and based on her race. (*Id.* at 10). Plaintiff further claims that she was denied her constitutional rights to a trial before an impartial jury, to obtain witnesses in her favor, and to present evidence in her defense. Apparently as a result of her trial, conviction, and sentence, Plaintiff asserts that Defendants subjected her to cruel and unusual punishment.

The Complaint also includes allegations regarding Plaintiff's bankruptcy proceedings. Plaintiff claims that she filed for federal bankruptcy in 2014. According to Plaintiff, although her bankruptcy filing was successfully discharged in 2015, "in 2016 the Government revoked [her] bankruptcy rendering her vulnerable financially and at risk of losing her investment property." (*Id.* at 4). Plaintiff indicates that she then ran for the United States Senate and used her political platform to discuss corruption in Cincinnati government, including the misappropriation of federal funds made possible through the CRA. (*Id.* at 4–5). Plaintiff alleges that after also speaking about the same topics during radio and television broadcasts as a journalist, she had bankruptcy filings dismissed and was given a two-year bar from filing for bankruptcy in 2018. She further alleges that "bankruptcy court Government personnel" leaked information regarding the bankruptcy dismissals to the Hamilton County Court of Common Pleas, resulting in the foreclosure of her investment properties without notice. (*Id.* at 5).

Based on the above factual allegations, the Court understands Plaintiff to raise alleged constitutional violations under 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Agents of the Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971). As noted above, Plaintiff also claims that Fifth Third violated the Community Reinvestment Act of 1971 and Civil Rights Act of 1964. Against both Defendants, Plaintiff also asserts state law claims, including negligence, slander, libel, and defamation of character.

As relief, Plaintiff seeks a full pardon by the President of the United States, immediate release from federal custody, all felony convictions sealed and expunged, bankruptcy records sealed and expunged, and monetary damages. (*Id.* at 14).

C.    **Analysis**

Plaintiff's Complaint is subject to dismissal at the screening stage. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

As an initial matter, this Court does not have the authority to grant Plaintiff a presidential pardon. *See Green v. United States*, No. 4:06-cr-0679644, 2017 WL 679644, at *3 (D.S.C. Feb. 21, 2017) ("The power to grant pardons, which is the effect of vacating a conviction, is simply not a power possessed by federal judges under Article III of the Constitution."). It appears that Plaintiff has already filed an application for the commutation of sentence. (*See* Doc. 10). To the extent that Plaintiff seeks a pardon in this civil rights action, she fails to state a claim upon which relief may be granted.[2]

Plaintiff's challenge to the validity of her conviction and sentence should also be dismissed. Plaintiff asserts several alleged constitutional violations in her criminal case and seeks immediate release from federal custody. As here, where Plaintiff challenges the validity of her conviction or sentence and seeks immediate or speedier release, the proper mechanism for Plaintiff to challenge her present physical custody is a petition for a writ of habeas corpus, not this civil rights action.

---

[2] Similarly, if Plaintiff wishes to seal or expunge records in her bankruptcy proceedings, Plaintiff should file such requests with the United States Bankruptcy Court or appeal from these proceedings.

*Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (where a prisoner challenges "the very fact or duration of his physical imprisonment, . . . his sole federal remedy is a writ of habeas corpus"); *Knight v. Nugent*, Case No. 1:20-cv-682, No. 1:20-cv-682, 2020 WL 1640309, at *2 (N.D. Ohio Apr. 2, 2020) (noting that to the extent that the plaintiff "seeks reversal of her [federal] conviction, dismissal of the charges and release from prison, her sole remedy is habeas corpus, or in this case a Motion to Vacate Conviction or Sentence under 28 U.S.C. § 2255"). To the extent that Plaintiff seeks release from imprisonment, she must appeal her criminal conviction, then file a federal motion to vacate, set aside, or correct sentence in her criminal case.

Further, to the extent Plaintiff seeks money damages based on her allegedly unconstitutional conviction and sentence, these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). A judgment in Plaintiff's favor on her claims of constitutional error during her federal criminal proceedings would necessarily imply the invalidity of her conviction and sentence. *See id.* at 487. Because Plaintiff has not alleged facts indicating that her sentence has been invalidated by a federal or state court or other appropriate tribunal, she may not proceed with such a claim for damages in this action. *See Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 460 (6th Circ. 2006) ("*Heck*'s litigation bar applies with equal force to *Bivens* actions."); *Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998) (stating that the "*Heck* holding applies equally to an action brought under *Bivens*: so that a federal prisoner could not bring a *Bivens* action until demonstrating that his conviction has been "declared invalid or otherwise impugned as set forth in *Heck*.").

In any event, Plaintiff's claims for damages against Defendant the United States of America should be dismissed. In *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that plaintiffs may sue federal officials for denying them their constitutional rights. *Bivens*, 403 U.S. at 390-97. However, a *Bivens* action may be

8

brought only against individual federal officials, not against the United States. *Shaner v. United States*, 976 F.2d 990, 994 (6th Cir. 1992), citing *Ashbrook v. Block*, 917 F.2d 918, 924 (6th Cir. 1990). Plaintiff's *Bivens* claim against the United States is barred by sovereign immunity. *Ashbrook*, 917 F.2d at 924. Therefore, Plaintiff's *Bivens* claim against the United States must be dismissed.

Plaintiff's claims against Defendant Fifth Third Bank should also be dismissed. To the extent that Plaintiff seeks to hold the Defendant bank liable for alleged constitutional violations under 42 U.S.C. § 1983, Plaintiff must allege and prove that a person acting under color of state law deprived her of a right secured by the federal Constitution or laws of the United States. However, Fifth Third Bank is not a state actor subject to liability under § 1983. *Daniels v. Charter One Bank*, 39 F.App'x 223, 225 (6th Cir. 2002). *See also Tafts v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct.") (citation modified). Nor has Plaintiff alleged facts to plausibly suggest that Fifth Third's alleged actions in this case may be fairly attributable to the state. *See Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 139-40 (6th Cir. 2023). To the extent that Plaintiff's claims are properly construed as being brought under *Bivens*, Plaintiff's claims are still subject to dismissal for failure to state a claim upon which relief may be granted because *Bivens* is also unavailable against private actors. *See Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26, 33 (1st Circ. 2003) (noting that "[t]he Supreme Court has already limited *Bivens* actions by refusing to extend them to private entities acting under color of federal law" in finding no *Bivens* violation by a Bank in providing information to law enforcement) (citing *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61 (2001)).

Based on her allegations of discriminatory loan practices, Plaintiff also claims that Fifth Third violated the Community Reinvestment Act of 1971 and the Civil Rights Act of 1964. First,

9

Plaintiff's claim under the Community Reinvestment Act, 12 U.S.C. § 2901, should be dismissed because the Act does not provide for a private cause of action. *See Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992). *See also Lessnau v. Dep't. of Vet. Affairs*, No. 12-14376, 2013 WL 4084757, at *3 (E.D. Mich. Aug. 13, 2013) ("there is no private cause of action under the CRA"); *Harambee Uhuru School, Inc. v. Kemp*, No. C2-09-949, 1992 WL 274545, at *6 (S.D. Ohio Sept. 30, 1992) (same).

Plaintiff's claims brought under the Civil Rights Act of 1964 should also be dismissed. The Court understands Plaintiff's claims to be brought under Title VI of the act, which provides that "[n]o person in the United States shall, on the ground of race . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. As noted above, Plaintiff contends that Fifth Third Bank, who she alleges receives federal funding, utilized discriminatory lending practices to deny her various loan application from 2005 through 2020. Similar to § 1983, Title VI does not contain its own statute of limitations and borrows the state's personal injury limitations period. *See Lillard v. Shelby Cnt. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) (finding that the state personal injury limitations period applied to claims under Title VI)). Accordingly, "[t]he Sixth Circuit had held that claims brought pursuant to Title VI and § 1983 are governed by the two-year statute of limitations found in Ohio Rev. Code § 2305.10." *Brooks v. Skinner*, 139 F.Supp.3d 869, 880 (S.D. Ohio Oct. 15, 2015) (citing *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 937, 939 (6th Cir. 1999)). In this case, because Plaintiff did not file the instant action until September 16, 2025, her claims brought under Title VI arising from alleged discriminatory lending practices in 2005–2020 should be dismissed as time-barred.

Finally, the Court should dismiss Plaintiff's state-law claims without prejudice. (*See* Doc. 1 at 14). Having determined that Plaintiff's federal claims should be dismissed against the named

10

Defendants, it is recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss such claims without prejudice. *See Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir. 2004) (although the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is a matter of discretion, when a court dismisses all federal claims before trial, it generally should dismiss the state law claims as well).

Accordingly, in sum, it is recommended that the Court dismiss with prejudice Plaintiff's federal claims against Defendants for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Having recommended that the Court dismiss Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims without prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

2. The Court **DECLINE to exercise supplemental jurisdiction** over Plaintiff's remaining state-law claims and **DISMISS** such claims **without prejudice**.

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to,

11

and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date: November 24, 2025                    /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE